UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ETHEL BACON**                                                                               **CIVIL ACTION**

**VERSUS**

**ACE AMERICAN INSURANCE**
**COMPANY, HEARTLAND EXPRESS,**                                           **NO. 07-615-C-M2**
**INC. AND PATRICK CARROLL**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 10 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 10 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, October 7, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ETHEL BACON** | **CIVIL ACTION** |
| **VERSUS** | |
| **ACE AMERICAN INSURANCE COMPANY, HEARTLAND EXPRESS, INC. AND PATRICK CARROLL** | **NO. 07-615-C-M2** |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion for Partial Summary Judgment (R. Doc. 7) filed by defendants, Ace American Insurance Company, Heartland Express, Inc., and Patrick J. Carroll (collectively "defendants") and the Motion for Expedited Hearing on Defendants' Motion for Partial Summary Judgment (R. Doc. 10) filed by plaintiff, Ethel Bacon ("Bacon"). Bacon has filed an opposition (R. Doc. 8) to the defendants' summary judgment motion, in response to which defendants have filed a reply memorandum. (R. Doc. 9-3).

## FACTS & PROCEDURAL BACKGROUND

This lawsuit arises out of an automobile accident which occurred on or about July 5, 2006. Bacon contends that, on that date, her vehicle was struck by an 18-wheeler driven by defendant, Patrick Carroll ("Carroll"), which was owned by defendant, Heartland Express, Inc. ("Heartland"), and insured by defendant, Ace American Insurance Company ("Ace"). Both vehicles were traveling westbound on US Highway 190, and the accident occurred when Carroll was making a lane change. Bacon alleges that, as a result of the accident, her right knee struck the steering column of her vehicle, fracturing her knee cap. In her petition, she claims that she is entitled to the following damages: (1) medical expenses, past, present and future; (2) mental anguish, past, present, and future; (3) pain

1

and suffering, past, present, and future; (4) travel expenses; and (5) miscellaneous expenses.  While the negligence of Carroll has been disputed in this matter, defendants assume, for purposes of this motion only, that Carroll was negligent in causing the collision in question.

At the time of the accident and since the mid-1990's, Bacon has been under the care of an orthopedic surgeon, Dr. Lawrence Messina, for a variety of orthopedic problems, including a total knee replacement of her right knee in September 1996 and her left knee in March 2001.  In the months preceding the accident at issue, Bacon continued to see Dr. Messina for complaints of pain in her right knee.  Specifically, on February 13, 2006, Bacon presented to Dr. Messina with complaints of swelling of her right knee, which Dr. Messina noted had been giving her problems for a short period of time.  *See*, Exhibit C to defendants' motion.  Bacon did not remember any antecedent trauma to her knee at that time and explained to Dr. Messina that she felt like her knee was going to give out and that she was going to fall.  Dr. Messina aspirated some bloody fluid from the right knee.  *Id.* During his deposition in this matter, he noted that such bloody fluid is "indicative of some type of traumatic effect going on within the knee joint because it's not normal to have blood in your knee."  *See*, Exhibit D to defendants' motion, pp.23-24.  He explained that bloody fluid in the knee is one of the things you could see if a patient has a loose component in the knee.  *Id.*, p.24.  Dr. Messina therefore ordered plain x-rays of Bacon's right knee; however, such x-rays did not reveal any evidence of loosening or fracture in the knee.  *See*, Exhibit C to defendants' motion.  He also recommended a bone scan to confirm that Bacon was not having any loosening problems.  *Id.*; Exhibit D, p. 23.  Bacon's bone scan, performed on February 22, 2006, revealed increased uptake around the prosthesis, which, according

to Dr. Messina's deposition testimony, can be consistent with a loosening of the joint prosthesis. *Id.*, p. 25.

Bacon returned to see Dr. Messina on March 1, 2006. At that time, she was still complaining of swelling of her right knee unchanged since her last visit; however, Dr. Messina noted, during that visit, that her symptoms were not significant enough to warrant surgery. *See*, Exhibit C to defendants' motion. His physical examination revealed that Bacon could ambulate with the use of a cane, that she had full extension and flexion to greater than 90 degrees and no instability; and that her neurovascular status was intact. He therefore recommended that he see her again once it became "bad enough" that she thought she needed surgery. *Id.* During his deposition in this matter, however, Dr. Messina indicated that, based upon Bacon's bone scan results, she was a surgical candidate at the time of her March 1, 2006 visit and that, if she had expressed to him at that time that the pain was severe enough that she wanted surgery, he would have proceeded with surgery. *See*, Exhibit D, p. 28.

Bacon presented to Dr. Messina again on June 7, 2006, approximately one (1) month before the accident at issue. At that time, she continued to complain of swelling and tenderness in her right knee, which she localized to the medial and lateral joint lines. Based upon her continued symptoms and her x-rays and bone scan, Dr. Messina opined that Bacon had aseptic loosening, and he noted that he did not know if there was anything else that could be offered to Bacon to relieve her symptoms, other than surgical intervention. Because neither he nor Bacaon were anxious to proceed with surgery, he recommended trying to avoid surgery at that time. *See*, Exhibit C.

Following the accident in question, Bacon returned to see Dr. Messina on July 5, 2006. At that time, she was again complaining of pain and tenderness in her right knee. She had a large effusion (or blood in her joint), but, according to Dr. Messina's deposition testimony, her knee was stable. Her x-rays revealed a linear fracture of the lateral aspect of the right patella (knee cap). *See*, Exhibit D, p. 33. During his deposition, Dr. Messina explained that the condition for which he had been treating Bacon prior to the accident, pain associated with a loosening of her prosthesis in the knee joint, was different from the fracture that she sustained during the accident in question. *Id.*, pp. 34-35. He specifically admitted, at that point in his deposition, that the knee replacement surgery that had been recommended for Bacon had nothing to do with the fracture of the patella sustained during the accident in question. *Id.*, p. 35. To treat Bacon's fractured patella, he placed her knee in a brace to immobilize it and instructed her to use a walker. *Id.*

Bacon presented to Dr. Messina again on August 9, 2006. *See*, Exhibit E. At that point, Dr. Messina noted that she was "doing much better." She had minimal tenderness to her knee but had "a lot of quadriceps weakness," which needed to be resolved. *Id.* He noted no ligament instability and found that Bacon's patella was stable to transverse and longitudinal palpation. Dr. Messina recommended that Bacon perform quad-setting exercises and contact him in one week to let him know how she was doing. *Id.*

Bacon returned to see Dr. Messina on September 19, 2006. At that time, she complained of pain localized to the thigh bone side of her knee joint and explained that, since the accident, she had to take more pain medication. Dr. Messina's note reflects that Bacon had loosening prior to the accident in question, but that the accident seemed to have "aggravate[d] things a little bit." *See*, Exhibit D, p. 44. Dr. Messina, however, informed

4

Bacon, during that visit, that he could not say the accident was completely responsible for her loosening problems because such problems did preexist the accident. During his deposition, Dr. Messina explained that, while he believed Bacon's fracture of the patella was resolving at the time of her September 19, 2006 visit, the patella is nevertheless a part of the anterior thigh muscle so, when there is an injury to the patella, one also injuries or weakens the anterior thigh muscle, and when someone is eighty-two (82) years old, like Bacon, it "takes a long time for that to recover." *Id.*, p. 45. During the September 19, 2006 visit, Dr. Messina ordered x-rays, which again revealed possible aseptic loosening of the femoral component in her right knee. *Id.*, p. 45.

Bacon continued to treat with Dr. Messina for the next several months, at which time she was still complaining of pain in her right knee. Ultimately, in March 2007, Dr. Messina performed a knee replacement surgery on Bacon's right knee to address the component loosening issues she was experiencing. During his deposition, Dr. Messina testified that he could not opine definitively, and would have to speculate, as to whether or not the accident in question more probably than not caused Bacon to have to undergo the knee replacement surgery in March 2007.[1]  *Id.*, p. 48.

---

[1] Specifically, the following exchange occurred during Dr. Messina's deposition:

> Q.   Is it something that you can testify that more probably than not the accident caused the condition in the joint to become worse?
>
> A.   Yeah, you know, I don't know that – I can tell you that, you know, when I take an implant out, what I do is take a hammer and hit it and that's basically what happened to [Bacon] in this accident, except nobody used a hammer, they used a car. So I can't tell you that it's not a possibility, but I know you all want this probability, is it more likely than not kind of question

5

Defendants have now filed the present motion for partial summary judgment, wherein they contend that Bacon's claims arising out of or related to her March 2007 knee replacement surgery should be dismissed because there is insufficient evidence generating a material dispute as to whether that surgery was necessitated by the accident in question.

## LAW & ANALYSIS

**I.   Summary judgment standard:**

Summary judgment is appropriate where the pleadings, discovery products, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. Rule Civ. Proc. 56(c).  A "genuine issue" exists when

---

> that I don't know that I can answer except to speculate.
>
> * * *
>
> A.   I mean only way I can say is to speculate one way or another.  I can't say [the accident] didn't make [Bacon's loosening problem] worse.  I can't say that [the accident] did make [the loosening problem] worse.  Certainly the trauma of an accident is the kind of thing that could make [loosening] worse.  Did it make it worse? I don't know of any way I can tell you.  Certainly it's possible, but I can't tell you without – you know, sit here and say like those guys on CSI Miami do, there's no way I can say that.  There's no test that I do in the operating room to say it.
>
> If [Bacon] comes in and tells me, yeah, [my knee] hurts me more.  I'm not going to say that she didn't have what I thought was a loose component.  I really thought that she did.  Afterwards she really is taking more pain medication.  So you could speculate, certainly, [the accident] aggravated something inside of her knee.

*Id.*, p. 47-48.

a reasonable jury could resolve the disputed fact(s) in favor of the non-movant, and a "material" fact is one that might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[2] Only if the nonmoving party sets forth specific facts and evidence supporting the allegations essential to his/her claim will a genuine issue of material fact be found to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).[3]

**II.   Applicable Louisiana law:**

Because this is a diversity case, the Court must apply Louisiana law. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003). Under Louisiana law, a plaintiff in a tort case, such as this, has the "burden of proving by a preponderance of the evidence that the accident more probably than not caused the claimed disabling condition." *Jones v. Harris*, 04-0965 (La. App. 4 Cir. 2005), 896 So.2d 237, 246. That burden is satisfied if medical evidence is presented establishing that it is "more probable than not that the claimed condition was caused by the accident." *Id.*; *Maranto v. Goodyear Tire & Rubber Co.*, 650 So.2d 757 (La. 1995).[4] The mere possibility of a causal connection is insufficient

---

[2] In reviewing a motion for summary judgment, a court ". . .must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh evidence." *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2110, 147 L.Ed.2d 105 (2000).

[3] The nonmoving party may not rely upon pleadings, conclusory allegations, unsubstantiated assertions or arguments alone, but instead must come forward with evidence based on personal knowledge that demonstrates the existence of a material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the record taken as a whole does not lead a rational trier of fact to find for the non-moving party, no genuine issue of material fact exists, and the mover is entitled to summary judgment as a matter of law. *Id.*

[4] When the conclusion regarding medical causation is not one within common knowledge, as in the present case, expert medical testimony is required. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La. 1993).

7

to support any recovery. *Broyard v. Rainer*, 2003-0123 (La. App. 4 Cir. 2003), 850 So.2d 793 ("Lawsuits may not be decided on mere speculation or suspicion"); *Mart v. Hill*, 505 So.2d 1120, 1128 (La. 1987); *Galjour v. General American Tank Car Corp.*, 1990 WL 9867 (E.D. La. 1990).

### III.   Analysis of present case:

The only medical testimony Bacon has presented in this case relative to whether the accident in question caused her to have to undergo her March 2007 knee replacement surgery is that of Dr. Messina. As noted above, Dr. Messina could not render a definitive opinion during his deposition as to whether the accident in question "more probably than not" caused Bacon to have to undergo knee replacement surgery. He could only testify that such a causal connection was "possible," and that any opinion by him regarding probability would only be speculative. Since mere speculation or suspicion as to what caused Bacon to have to undergo knee replacement surgery is insufficient to support a claim for recovery in that regard under Louisiana law, defendants' motion for partial summary judgment should be granted.[5] [6]

---

[5] While Bacon attempts to rely upon her own deposition testimony as evidence that an alleged significant increase in her knee pain after the accident is what caused her to have to submit to a knee replacement surgery that was unnecessary before the accident, such reliance upon her own, self-serving lay testimony is insufficient to carry her burden of proof on summary judgment. Bacon's belief as to whether her symptoms were severe enough prior to and after the accident to warrant surgery is insufficient to create a genuine issue of material fact as to causation under Louisiana law. As noted above, competent *medical* evidence is needed to establish that the accident in question more probably than not caused Bacon to have to undergo knee replacement surgery, and Bacon has failed to come forward with that proof. Even if Dr. Messina testified that the accident possibly aggravated Bacon's knee situation and caused her pain to increase (*See*, p. 47 of his deposition), he never testified that the accident is what caused Bacon to have to undergo knee replacement surgery. Given that he would have performed the surgery on Bacon prior to the accident had she elected to proceed with it, it appears that the surgery was warranted based upon Bacon's pre-existing condition,

8

Moreover, although Bacon attempts to rely, in her opposition to this motion, upon the presumption set forth in *Housely v. Cerise*, 579 So.2d 973 (La. 1991), the Court finds that reliance to be misplaced. The *Housely* presumption is as follows:

> A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.

*Id.*, at 980 (quoting *Lucas v. Ins. Co. of N. Am.*, 342 So.2d 591 (La. 1977). The only medical evidence presented to the Court (the medical records and deposition testimony of Dr. Messina) indicates that, in the months preceding the accident in question, Bacon experienced right knee pain and swelling similar to the pain and swelling she experienced after the accident. Such pre-accident pain and swelling had been attributed to a loosening of the prosthesis from her earlier knee replacement, and it had been recommended that she undergo knee replacement surgery when she reached a level of pain that she could no longer tolerate. Dr. Messina testified that he would have performed the knee replacement surgery on Bacon prior to the accident had she elected to go forward with the

---

regardless of whether the accident in question ever happened.

[6] Although the plaintiff's medical witness is not required to "recite the proper legal jargon *verbatim*" (*i.e.*, the "more probable than not" language) when rendering a causation opinion for the court to properly rely upon his testimony, it must be clear from the substance of the witness's testimony that causation exists by a preponderance of the evidence. *Hall v. Folger Coffee Co.*, 02-0920 (La. App. 4 Cir. 2003), 857 So.2d 1234, 1249. In this case, where Dr. Messina could only state that there is a possibility that the accident caused Bacon to have to undergo her March 2007 knee replacement surgery and where the evidence indicates that such surgery was warranted prior to the accident, if only the plaintiff had elected to go forward with it at that time, the Court cannot find, based upon the substance of the medical evidence, that plaintiff has proven, more probably than not, that her knee replacement surgery is attributable to the accident at issue.

9

surgery at that point because, based upon her bone scan, she was a candidate for same. Bacon has not presented any evidence refuting those facts. Thus, it is undisputed that Bacon was not "in good health" relative to her knee condition prior to the accident in question. Accordingly, the *Housely* presumption and its reduced burden of proving causation by only a "reasonable possibility" are inapplicable herein. Because Bacon has not presented any medical evidence creating a genuine issue of material fact as to whether the accident in question "more probably than not" caused her to have to undergo her March 2007 knee replacement surgery, defendants' motion for partial summary judgment should be granted.

## **RECOMMENDATION**

For the above reasons, the Motion for Partial Summary Judgment (R. Doc. 7) filed by defendants, Ace American Insurance Company, Heartland Express, Inc., and Patrick Carroll, should be **GRANTED**, and plaintiff Ethel Bacon's claims relating to her March 2007 knee replacement surgery (including claims for medical expenses and other general damages associated with the surgery) should be **DISMISSED WITH PREJUDICE**. Additionally, the plaintiff's Motion for Expedited Hearing on Defendants' Motion for Partial Summary Judgment (R. Doc. 10) should be **DENIED AS MOOT**.

Signed in chambers in Baton Rouge, Louisiana, October 7, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**